**IN THE COURT OF APPEALS OF IOWA**

No. 23-0399
Filed May 10, 2023

**IN THE INTEREST OF J.S.,**
**Minor Child,**

**J.S., Father,**
    Appellant,

**M.S., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Clinton County, Kimberly K. Shepherd, District Associate Judge.

A mother and father separately appeal the termination of their respective parental rights. **AFFIRMED ON BOTH APPEALS.**

Taryn R. McCarthy of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P., Dubuque, for appellant father.

Robert S. Gallagher, Bettendorf, for appellant mother.

Brenna Bird, Attorney General, and Dion D. Trowers, Assistant Attorney General, for appellee State.

Camille Kahn, Davenport, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Ahlers and Badding, JJ.

**AHLERS, Judge.**

The juvenile court terminated the parental rights of the mother and father to J.S. The parents separately appeal. Both parents challenge the statutory grounds authorizing termination.[1] The father also claims termination is not in the child's best interests, cites his bond with the child, and requests additional time to work toward reunification.

We conduct de novo review of orders terminating parental rights. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). Our review follows a three-step process that involves determining if a statutory ground for termination has been established, whether termination is in the children's best interests, and whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). If a parent does not challenge any of the three steps, we need not address it on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

Both parents challenge the statutory grounds for termination. Here, the juvenile court terminated their parental rights pursuant to Iowa Code section 232.116(1)(d), (e), and (f) (2022). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile

---

[1] The mother also claims the State did not make reasonable efforts toward reunification. The reasonable-efforts requirement is not a strict substantive requirement, but it is part of the State's ultimate proof that the child cannot be returned to the parent. *In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019). So, a reasonable-efforts challenge is generally a component of a statutory-grounds challenge. However, we do not address the mother's reasonable-efforts challenge because it appears she did not raise a reasonable-efforts challenge prior to the termination hearing, *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002), and she does not identify what services she believes should have been provided that would have led to reunification, *In re C.E.*, No. 22-1179, 2022 WL 4362094, at *1 (Iowa Ct. App. Sept. 21, 2022).

court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We elect to focus on section 232.116(1)(f) with respect to both parents. Termination under section 232.116(1)(f) requires proof that (1) the child is four years old or older; (2) the child has been adjudicated as a child in need of assistance; (3) the child has been removed from the parent's custody for at least twelve of the previous eighteen months; and (4) the child cannot be returned to the parent's custody at the time of the termination hearing. Neither parent challenges the first three elements. Instead, both focus on the fourth element and claim the State failed to establish the child could not be returned to their respective custody. Iowa Code § 232.116(1)(f)(4). We reject this claim with respect to both parents.

With respect to the mother, she tested positive for methamphetamine in April 2022, missed four drug tests requested in September and October, and missed one test in December. We presume her missed tests would have been positive for illicit substances. *See In re R.A.*, No. 21-0746, 2021 WL 4891011, at *1 (Iowa Ct. App. Oct. 20, 2021) (collecting cases noting missed tests are presumed positive for illegal substances). Given the mother's methamphetamine use followed by a series of missed tests, we are concerned that the mother's methamphetamine use will continue in the future. *See In re S.J.*, No. 20-1430, 2021 WL 811162, at *1 (Iowa Ct. App. Mar. 3, 2021). And "[a] parent's methamphetamine use, in itself, creates a dangerous environment for children." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020).

Just as concerning is the mother's relationship with her new fiancé, as the fiancé has a significant criminal history that includes domestic violence and child

endangerment.[2]  *See In re J.D.*, No 21-0391, 2021 WL 3379037, at *1 (Iowa Ct. App. Aug. 4, 2021) (recognizing exposure to domestic violence is harmful to children).  Yet the mother was steadfast at the termination hearing that her fiancé posed no safety risk to the child, calling into question her ability to protect the child. *See In re D.D.*, 955 N.W.2d 186, 193 (Iowa 2021) ("It's folly to think the mother will stand sentinel to protect against a foe she doesn't acknowledge exists.").  The mother refused to have her fiancé sign a release that would have permitted the Iowa Department of Health and Human Services to investigate the fiancé to ensure he would be a safe person to have around the child.  The mother's lack of cooperation that blocked a background check on the fiancé shows that the mother prioritizes her fiancé over the child's safety.

Given these facts, we agree with the juvenile court that the child could not be returned to the mother's custody and a statutory ground for termination is satisfied.  As the mother raises no additional claims properly before us on appeal, we end our analysis of her petition on appeal here.

With respect to the father, we also agree the child could not be returned to his custody.  The father also has a history of methamphetamine use, and he has never successfully completed substance-abuse treatment.  He tested positive for methamphetamine in April 2022, yet he tried to explain away at least some of his positive tests by claiming he came into contact with a methamphetamine-riddled loveseat.  So, we question whether the father can be honest with himself about his substance use.  Like with the mother, we are unable to conclude that the father's

---

[2] The mother and father's relationship was violent as well.

methamphetamine use is at an end, so we conclude the child cannot be returned to the father's custody safely.

Supporting our conclusion that the child cannot be returned to the father is his testimony that he wouldn't want the child to live at his current residence, presumably due to safety concerns. We understand the father plans on moving to a new residence soon, but when assessing the fourth element of section 232.116(1)(f) we must consider if the child can be returned to the parent at the time of the termination hearing—not some point in the future. *See* Iowa Code § 232.116(1)(f)(4) ("There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time."); *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that "at the present time" means at the time of the termination hearing). Even if we could consider what may occur in the near future, we cannot say the child could be returned to the father because he testified that he might have a roommate who he described as the landlord's friend. From his testimony, we deduce that the father does not know the person or whether the person would be safe to have around the child.

We agree with the juvenile court that the child could not be returned to the father's custody.

Next, we turn to the father's claim that termination is not in the child's best interests. In so doing, the father conflates our best-interest analysis[3] with whether

---

[3] When making a best-interest determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)).

we should forgo termination due to the parent-child bond, a permissive exception to termination.[4] Despite the fact the father conflates these issues, we will address them separately.

Based on our review of the record, we conclude termination is in the child's best interests. This child has significant needs due to behavioral issues, which the foster parent does well managing. The child is integrated into the foster family. *See* Iowa Code § 232.116(2)(b). He looks to his foster parent to meet his needs. For example, following his soccer games in which both parents and the foster parent attended, the child would run to the foster parent and ignore the parents. He tells the foster parent he loves her, and he is "excited to go and do things with her." In contrast, the father is not even able to provide the child a safe home at the present time. Termination would allow for adoption, which would provide the child with an opportunity to achieve permanency and the stability he very much needs. Termination is in the child's best interests.

As to the father's claim that his bond with the child should preclude termination, it is his burden to establish such. *See In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). We are persuaded that there is a bond between the father and the child. Yet the mere "existence of a bond is not enough." *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). Instead, the bond must be so significant that severing it would be manifestly detrimental to the child. *Id.* The father has failed to establish a bond of this magnitude.

---

[4] Section 232.116(3)(c) allows the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

Finally, we address the father's request for additional time to work toward reunification. If the juvenile court decides not to terminate parental rights, it has the option of ordering any alternative statutory permanency option, which includes giving the parent an additional six months to work toward reunification. Iowa Code § 232.117(5) (permitting the court to enter a permanency order pursuant to section 232.104 if it does not terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permanency option of giving the parents an additional six months). However, before the court may grant the parent additional time to work toward reunification, it must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b). On appeal, the father claims he "was able to articulate what he would need to do in the event that the [c]ourt granted an extension of time to work toward reunification" without elaboration of what changes we should expect to occur in the immediate future. We assume the father is referencing his anticipated move. But as we already explained, the child would not necessarily be returned to the father once he moves given the fact that he may have a roommate unknown to all, including the father. And the father's unresolved substance abuse would remain a barrier to reunification. We agree with the juvenile court that the father should not be given more time to work toward reunification.

**AFFIRMED ON BOTH APPEALS.**